IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| PHILLIP E. OWEN; OWEN PROPERTIES LLC; and MICHAEL L. FEVES, | Case No. 3:17-cv-221-SI |
| Plaintiffs, | OPINION AND ORDER |
| v. | |
| CITY OF PORTLAND, | |
| Defendant. | |

John A. DiLorenzo, Jr. and P. Andrew McStay, Jr., DAVIS WRIGHT TREMAINE LLP, 1300 S.W. Fifth Avenue, Suite 2400, Portland, OR 97201. Of Attorneys for Plaintiffs.

Tracey Reeve, City Attorney; Harry Auerbach, Chief Deputy City Attorney; Denis M. Vannier, Deputy City Attorney, and Rebeca Plaza, Deputy City Attorney; OFFICE OF THE CITY ATTORNEY, 1221 S.W. Fourth Avenue, Room 430, Portland, OR 97204. Of Attorneys for Defendant.

Becky Straus, Marisa Samuelson, and Monica Goracke, OREGON LAW CENTER, 522 S.W. Fifth Avenue, Suite 812, Portland, OR 97204; Andrea Ogston and Julia Olsen, LEGAL AID SERVICES OF OREGON, 520 S.W. Sixth Avenue, Suite 700, Portland, OR 97204. Of Attorneys for *Amicus Curiae* Coya Crespin, Scott Carroll, and Yesica Sanchez.

**Michael H. Simon, District Judge.**

On February 2, 2017, the Portland City Council ("City Council") unanimously adopted

Ordinance No. 188219 ("Ordinance"). The Ordinance amends Portland City Code ("PCC")

PAGE 1 – OPINION AND ORDER

§ 30.01.085 (Portland Renter Additional Protections) to add a temporary requirement for the provision of relocation assistance to involuntarily displaced residential tenants during the current Portland housing emergency. In adopting the Ordinance, the City Council declared that an emergency exists, sufficient to prevent delays in implementing the Ordinance. Thus, the Ordinance became effective immediately upon adoption. The Ordinance provides that its substantive provisions shall remain in effect during the duration of the housing emergency, which was first declared by the City Council on October 7, 2015, and extended in the Ordinance through October 6, 2017.

Plaintiffs are landlords who own and manage a mix of multi-family and single-family dwellings in Portland. On February 6, 2017, Plaintiffs sued the City of Portland ("City") in state court, seeking declaratory and injunctive relief based on a variety of legal claims, including alleged violations of the United States Constitution. Invoking federal question jurisdiction, the City removed the lawsuit to federal court on February 9, 2017. The next day, February 10, 2017, Plaintiffs moved for a temporary restraining order, seeking to enjoin the City from allowing the Ordinance "to take effect." After receiving legal memoranda from all parties, the Court held a hearing on February 15, 2017. Based on the arguments of the parties and the evidence submitted, the Court issues this decision.

**STANDARDS**

In deciding whether to grant a motion for temporary restraining order ("TRO"), courts look to substantially the same factors that apply to a court's decision on whether to issue a preliminary injunction. *See Stuhlbarg Int'l Sales Co. v. John D. Brushy & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A preliminary injunction is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008). A plaintiff seeking a preliminary injunction generally must

show that: (1) the plaintiff is likely to succeed on the merits; (2) the plaintiff is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in favor of the plaintiff; and (4) an injunction is in the public interest. *Winter*, 555 U.S. at 20 (rejecting the Ninth Circuit's earlier rule that the mere "possibility" of irreparable harm, as opposed to its likelihood, was sufficient, in some circumstances, to justify a preliminary injunction).

The Supreme Court's decision in *Winter*, however, did not disturb the Ninth Circuit's alternative "serious questions" test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. Thus, a preliminary injunction may be granted "if there is a likelihood of irreparable injury to plaintiff; there are serious questions going to the merits; the balance of hardships tips sharply in favor of the plaintiff; and the injunction is in the public interest." *M.R. v. Dreyfus*, 697 F.3d 706, 725 (9th Cir. 2012) (citing *Cottrell*).

Finally, a TRO is necessarily of a shorter and more limited duration than a preliminary injunction.[1] Thus, the application of the relevant factors may differ, depending on whether the court is considering a TRO or a preliminary injunction.[2] Indeed, the two factors most likely to be

---

[1] The duration of a TRO issued without notice may not exceed 14 days but may be extended once for an additional 14 days for good cause; in addition, the reasons for such an extension must be entered in the record. Fed. R. Civ. P. 65(b)(2). When a TRO is issued with notice and after a hearing, however, the 14-day limit for such orders issued without notice does not apply. *See Pacific Kidney & Hypertension, LLC v. Kassakian*, 156 F. Supp. 3d 1219, 1222 n.1 (D. Or. 2016). Nevertheless, absent consent of the parties, a court may not extend a TRO indefinitely, even upon notice and a hearing. Accordingly, unless the parties agree otherwise, a court should schedule a preliminary injunction hearing to occur not later than 28 days after the date that the court first issues a TRO. *Id.*

[2] A preliminary injunction also is of limited duration because it may not extend beyond the life of the lawsuit. That is the role of a permanent injunction, which a court may enter as part

affected by whether the motion at issue is for a TRO or a preliminary injunction are the "balancing of the equities among the parties" and "the public interest."

## BACKGROUND

### A.  The Ordinance

In the Ordinance, the City Council made certain findings of fact, including the following:

• This is the fourth consecutive year that Portland has seen an annual rent increase in excess of five percent, with the average rent increasing nearly 30 percent since 2012.

• Significant increases in rent raise serious concerns over potential involuntary economic displacement.

• Due to the severe shortage of rental housing and shelter space arising from human-made events and circumstances, the Portland City Council declared a housing emergency on October 7, 2015, which the Ordinance extends until October 6, 2017.

• At least 45 percent of the population of Portland are tenants.

• More than 52 percent of tenants in Portland are considered "cost-burdened," meaning that they pay more than 30 percent of their gross monthly income on rent.

• The average Portland tenant pays between 45 percent and 49 percent of his or her income on rent, which puts that tenant at significant risk of becoming "severely cost-burdened" (*i.e*., paying more than 50 percent of gross monthly income on rent).

• Rent increases of 10 percent or more have the effect of constructively evicting tenants, resulting in involuntary displacement.

• Involuntary displacement also occurs due to "no cause" evictions.

---

of a final judgment, when appropriate. A preliminary injunction, however, may last for months, if not years, while the lawsuit continues toward its conclusion. *Pacific Kidney*, 156 F. Supp. 3d at 1223 n. 2.

•    Involuntary displacements have contributed to a significant increase in homelessness.

•    Relocation expenses associated with involuntary displacement present a significant financial burden to an average Portland tenant.

•    Relocation assistance is essential to allow tenants to manage the unexpected relocation expenses that result from involuntary displacements.

•    Relocation assistance amounts required under the Ordinance were determined by the City Council by averaging the range of rental rates of similarly-sized units across the city.

The Ordinance amends the PCC § 30.01.085 in two substantive respects relevant to this lawsuit. The Court refers to the first substantive respect as the "No-Cause Eviction Provision." The Court refers to the second substantive respect as the "Ten Percent Rent Increase Provision."

Under the No Cause Eviction Provision, the Ordinance provides that a landlord who terminates a dwelling unit rental agreement without cause (*i.e.*, for "no cause") must pay the affected tenant a "Relocation Assistance" payment not less than 45 days before the termination date provided in the notice of termination. The amount of the required Relocation Assistance payment varies depending on the size of the dwelling unit. For a studio or single room occupancy dwelling unit, the required payment is $2,900; for a one-bedroom dwelling unit, the required payment is $3,300; for a two-bedroom dwelling unit, the required payment is $4,200; and for a three-bedroom or larger dwelling unit, the required payment is $4,500. For purposes of this provision, a landlord that declines to renew or replace an expiring fixed-term lease on substantially the same terms except for the amount of rent terminates the rental agreement and is subject to the obligation to pay Relocation Assistance. The No-Cause Eviction Provision does not apply to week-to-week tenancies, to a landlord who rents out only one dwelling unit in the

City of Portland, to a landlord who temporarily rents out the landlord's principal residence during the landlord's absence of not more than three years, or to tenants that occupy the same dwelling unit as the landlord.

Under the Ten Percent Rent Increase Provision, the Ordinance provides that if, within 14 days after a tenant receives a notice of rent increase of 10 percent or more within a 12-month period the tenant provides written notice to the landlord of the tenant's intent to terminate the affected dwelling until rental agreement, then, within 14 days after the landlord receives that notice from the tenant, the landlord must pay that tenant a "Relocation Assistance" payment in an amount that varies depending on the size of the dwelling unit. For a studio or single room occupancy dwelling unit, the required payment is $2,900; for a one-bedroom dwelling unit, the required payment is $3,300; for a two-bedroom dwelling unit, the required payment is $4,200; and for a three-bedroom or larger dwelling unit, the required payment is $4,500. For purposes of this provision, a landlord that conditions the renewal or replacement of an expiring lease on the tenant's agreement to pay an increase in rent is subject to the obligation to pay Relocation Assistance. The Ten Percent Rent Increase Provision does not apply to week-to-week tenancies, to a landlord who temporarily rents out the landlord's principal residence during the landlord's absence of not more than three years, or to tenants that occupy the same dwelling unit as the landlord.

The Ordinance also provides that if a landlord fails to comply with any of these substantive provisions the landlord shall be liable to the tenant for an amount up to three months' rent, plus actual damages, plus the Relocation Assistance amount, plus reasonable attorney fees and costs. The Ordinance further states that any tenant claiming to be aggrieved by a landlord's

noncompliance with the Ordinance has a cause of action in any court of competent jurisdiction for damages and such other remedies as may be appropriate.

The Ordinance also applies to all notices of termination and notices of rent increase that are pending as of the effective date of the Ordinance, subject to a landlord's timely rescission of any such notices. If a landlord has given notice of termination but the termination has not yet occurred, the landlord, within 30 days of the effective date of the Ordinance, either shall notify the tenant in writing that the landlord has rescinded the notice of termination or shall pay the Relocation Assistance. If a landlord has given notice of an increase of a tenant's rent that triggers the obligation to pay Relocation Assistance and if the tenant has given the landlord notice that triggers the landlord's obligation to pay Relocation Assistance, the landlord shall have 14 days to give written notice to the tenant that the landlord has rescinded the rent increase (or reduced it below the level that triggers the landlord's obligation) or shall timely pay the Relocation Assistance. Finally, the Ordinance provides that if any portion of the Ordinance or the Relocation Assistance is ruled invalid, void, or illegal by an order of the court, the remainder of the Ordinance and the Relocation Assistance shall remain in full force and effect.

**B.  Plaintiffs**

### 1.  Phillip E. Owen and Owen Properties LLC

Plaintiff Phllip E. Owen ("Owen") owns and rents residential property in Portland. He also owns and manages Owen Properties LLC ("Owen Properties"). Through Owen Properties and its wholly-owned subsidiary limited liability companies, Owen currently rents out 75 units that are a mixture of multi-unit dwellings and single-family houses.

Owen has used no-cause eviction notices to remove problem tenants to protect the welfare and safety of responsible neighboring tenants. The advantage of using a without termination notice is that it allows Owen to remove a problem tenant quickly without requiring

neighbors to testify at a for-cause eviction hearing. In his experience, neighboring tenants may be too fearful or otherwise unable to testify against a problem tenant who is harassing or disturbing them.

Owen states that he will no longer use no-cause evictions in these and similar circumstances due to the requirement to pay substantial relocation assistance. According to Owen, the significant added expense of paying relocation assistance to a problem tenant will force him to employ the for-cause eviction process. That process may or may not be successful depending on neighbors' willingness to testify. Owen predicts that the overall effect will be to lessen his ability to protect tenant safety and increase the exposure of vulnerable neighbors to situations they wish to avoid if possible. He adds that an additional consequence of the relocation assistance requirement is that it will reduce his flexibility in dealing with tenants, which in turn will negatively affect those tenants.

Owen also states that his own living arrangements are directly and negatively affected by the new relocation assistance requirement due to repairs that need to be made to his home. Owen and his wife have determined that the best place for them to live on a temporary basis is their former primary residence, which is now being rented by four single people. Owen issued a 90-day no-cause eviction notice to those tenants on January 30, 2017. Under the new Ordinance, he will be required to pay relocation assistance to those tenants.

Finally, Owen states that he currently has rental units that are more than 10 percent below market rents. Owen adds that he would like to raise the rent he charges to finance improvements to the properties and to account for tax and ratepayer increases. Owen asserts that due to the requirements of the Ordinance, he will not raise rents by 10 percent or more and he will not undertake the desired improvements.

### 2.  Michael L. Feves

Plaintiff Michael L. Feves ("Feves") owns and manages 465 rental units in 17 properties in Portland. He has used no-cause eviction notices in a variety of situations to remove problem tenants who were threatening or disturbing other tenants. He states that such terminations are particularly useful to him because they are relatively quick and do not require reluctant or frightened neighbors to testify at a for-cause eviction hearing. On two separate occasions in 2015, he used no-cause evictions to remove tenants with mental health issues who were disturbing fellow tenants at all hours. Feves asserts that he also used a no-cause eviction to remove a tenant who had multiple unauthorized roommates and had listed the apartment on AirBnB, which reduced the security of the building and disturbed neighboring tenants who had to deal with unauthorized persons in the complex. Feves adds that because of the significant relocation penalties imposed by the Ordinance, he will no longer use no-cause evictions.

Finally, Feves states that most of the apartments he operates are more than ten percent below market rates. He adds that if rent raises are capped at ten percent per year, then he will need to increase rents to the maximum allowed to protect himself from future expenses and to pay for increased costs associated with relocation penalties. He also notes that these caps will still produce a circumstance in which his rents will lag behind the market. This will be very problematic when major repairs and maintenance are required in the future.

## C.  Plaintiffs' Complaint and Motion for Temporary Restraining Order

In their Complaint, Plaintiffs seek both a declaratory judgment and permanent injunctive relief barring the City "from taking any action to implement or enforce the amendments to the Ordinance." Complaint ¶ 29 (ECF 1-1). In support of these claims for relief, Plaintiffs raise five legal challenges to the Ordinance. First, Plaintiffs argue that Oregon law, specifically Or. Rev. Stat. § 91.225, expressly preempts the Ten Percent Rent Increase Provision of the Ordinance.

Second, Plaintiffs argue that Oregon law, specifically Or. Rev. Stat. §§ 90.427 and 90.115,

impliedly preempts the No-Cause Eviction Provision of the Ordinance. Third, Plaintiffs argue

that Or. Rev. Stat. §§ 90.427 and 90.100 impliedly preempts the Ordinance as applied to

fixed-term tenancies. Fourth, Plaintiffs argue that the Ordinance unconstitutionally impairs

Plaintiffs' existing contracts in violation of Article I, section 21 of the Oregon Constitution.

Fifth, Plaintiffs argue that the Ordinance unconstitutionally impairs Plaintiffs' existing contracts

in violation of Article I, section 10, clause 1 of the United States Constitution. Sixth, Plaintiffs

argue that the Ordinance infringes upon Plaintiffs' substantive due process rights under the 14th

Amendment to the U.S. Constitution. Complaint, ¶ 26.[3]

In their motion for temporary restraining order, Plaintiffs ask the Court for an order

"enjoining defendant City of Portland (the "City") from allowing Ordinance No. 188219, which

amends the City's 'Portland Renter Additional Protections,' *to take effect*." ECF 4 at 1 (emphasis

added). On February 13, 2017, Plaintiffs filed a motion for preliminary injunction, seeking "a

preliminary injunction *staying* Ordinance No. 188219" (emphasis added). ECF 18 at 2. Plaintiffs

add, regardless of the outcome of Plaintiff's motion for temporary restraining order, Plaintiffs

"request that the Court set a briefing and hearing schedule" for their motion for preliminary

injunction. *Id*.

## DISCUSSION

### A.  The Ordinance Already Has Taken Effect

The only motion for the Court to decide at this time is Plaintiffs' Motion for Temporary

Restraining Order, in which Plaintiffs ask for an order enjoining the City from allowing the

Ordinance "to take effect." In response, the City argues that, among other things, the Ordinance

---

[3] Plaintiffs also originally argued that the City Council invalidly enacted the Ordinance. Complaint, ¶ 26. Plaintiffs have since withdrawn that argument. ECF 19 at 2 n.1.

that Plaintiffs "seek to enjoin from taking effect has *already taken effect*." ECF 11 at 8 (internal

page 1) (emphasis in original). Thus, according to the City, "there is nothing for the Court to

order the City to do or not to do that will provide any relief to the plaintiffs." *Id; see also id.*

at 14 (internal page 7).

**B.  The Ordinance Creates a Private Cause of Action**

The Ordinance, which has now taken effect, creates a legal right, or private cause of

action, that may be asserted by a tenant against a landlord in a court of competent jurisdiction.

As the City explains:

> As a result [of the Ordinance having already taken effect], tenants
> now have the legal right to receive relocation assistance in certain
> circumstances, and have a private right of action if a landlord fails
> to pay the relocation assistance. PCC 30.01.085.D. The City has no
> role in enforcing the Ordinance. As the Oregon Court of Appeals
> recognized in *Sims v. Besaw's Cafe*, 165 Or. App. 180, 189; 997
> P.2d 201 (2000), the City has instead created a private right on the
> part of certain tenants to bring a claim. *Id*. If a tenant elects to
> bring such a claim the result is a private dispute between the tenant
> and the landlord that arises under Oregon municipal law. *Id*.

ECF 11 at 14 (internal page 7) (emphasis in original).

As shown in the case cited by the City, on at least one occasion previously, the City

Council has created a cause of action that may be enforced by private parties litigating in state

court. *See Sims v. Besaw's Cafe*, 165 Or. App. 180 (2000) (en banc) (holding that a Portland city

ordinance that created a private cause of action enforceable in state circuit court did not

impermissibly expand the circuit's court's jurisdiction). In *Sims*, the Oregon Court of Appeals,

sitting en banc, concluded that the state circuit court has jurisdiction to adjudicate a claim created

by a Portland ordinance. *Id.* at 187. Specifically, the court held:

> Oregon municipal law also is a source of law that an Oregon
> circuit court can apply in adjudicating a private dispute. In other
> words, it is within the judicial power of the circuit court to
> adjudicate a private dispute that arises under Oregon municipal

law. Consequently, the circuit court is a "court of competent
jurisdiction" to adjudicate a claim under the Portland ordinance.

*Id*. at 189.

The Court of Appeals' decision in *Sims*, however, was not without controversy. As Judge

Edmonds noted in his dissent, it is "generally accepted throughout jurisdictions in the United

States" that:

> "The well-established general rule is that a municipal corporation
> cannot create by ordinance a right of action between third persons
> or enlarge the common law or statutory duty or liability of citizens
> among themselves. Under the rule, an ordinance cannot directly
> create a civil liability of one citizen to another or relieve one
> citizen from a liability by imposing it on another."

*Id*. at 215-16 (Edmonds, J., dissenting) (quoting Eugene McQuillan, 6 *The Law of Municipal*

*Corporations* § 22.01, 388 (3d ed. 1998). In addition, then-Judge Linder stated in her concurring

opinion, joined by four other judges, including then-Judge Kistler, that "although I agree with the

lead opinion's ultimate validation of the city's ordinance, its analysis sweeps too broadly in

concluding generally that 'cities can enlarge the common-law duties and liabilities of private

parties.'" *Id*. at 197 (Linder, J., concurring).

The question of whether a city in Oregon may create by ordinance a right of action

between third persons or enlarge the common law or statutory duty of liability of citizens among

themselves and enforceable in Oregon circuit court has not yet been decided by the Oregon

Supreme Court. Nevertheless, when a federal court is required to apply state law and there is no

relevant precedent from the state's highest court but there is relevant precedent from the state's

intermediate appellate court, then the federal court must follow the intermediate appellate court's

decision unless the federal court finds convincing evidence that the state's supreme court likely

would not follow the decision of the intermediate court. *Ryman v. Sears, Roebuck & Co.*, 505

F.3d 993, 994 (9th Cir. 2007). Because *Sims* was decided en banc by the Oregon Court of

Appeals, this Court will follow that decision unless and until the Oregon Supreme Court directs otherwise.

**C. An Injunction Is an Order to Do or Refrain from Doing Something**

As already stated, because the Ordinance has already taken effect, it is too late for a Court to direct the City not to allow the Ordinance to take effect. In Plaintiffs' recently filed, but not yet fully briefed, motion for preliminary injunction, Plaintiffs ask the Court for a preliminary injunction "staying" the Ordinance. ECF 18 at 2. The request is imprecise. A court may "stay" its own order or the order of a lower court pending further review. But that is not an injunction, whether temporary, preliminary, or permanent.

As explained by the United States Supreme Court, an injunction "is a means by which a court tells *someone* what to do or not to do." *Nken v. Holder*, 556 U.S. 418, 428 (2009). In other words, when a court issues an injunction, the court "directs the conduct of a party, and does so with the backing of its full coercive powers. . . .[T]he order is directed at someone, and governs that party's conduct." *Id.*

Sometimes, when a law, ordinance, or regulation is challenged in court as being invalid, a court may temporarily or preliminarily enjoin the *implementation* or *enforcement* of that law, ordinance, or regulation during the pendency of the lawsuit seeking to declare the law invalid. At the end of the lawsuit, after determining on the merits that the law, ordinance, or regulation is invalid, a court also may permanently enjoin the *implementation* or *enforcement* of that law, ordinance, or regulation. *See, e.g.*, *Friends of the E. Hampton Airport, Inc. v. Town of E. Hampton*, 841 F.3d 133, 155 (2d Cir. 2016) (concluding that a preliminary injunction was appropriate to preclude enforcement of three local laws enacted by the Town of East Hampton, New York); *Washington v. Trump*, 2017 WL 462040 (W.D. Wash. Feb. 3, 2017) (granting a TRO and preliminarily enjoining enforcement of certain portions of a Presidential Executive

PAGE 13 – OPINION AND ORDER

Order relating to travel to the United States); *Nevada v. U.S. Dep't of Labor*, --- F. Supp.3d ---, 2016 WL 6879615 (E.D. Tex. Nov. 22, 2016) (granting emergency preliminary injunctive relief and enjoining the Department of Labor from implementing and enforcing certain regulations pending further order of the court); *Aguero v. Calvo*, 2015 WL 3573989 (D. Guam June 8, 2015) (granting summary judgment in favor of plaintiffs and permanently enjoining the Territory of Guam from enforcing any of its laws or regulations that prohibit otherwise qualified same-sex couples from marrying).

Here, the Ordinance at issue is not enforced by the City, and there is nothing further for the City to do to implement the Ordinance. There simply is no action for the City to take to implement or enforce the Ordinance. As already described, the Ordinance simply creates a legal right, or a cause of action, under which a tenant may to a landlord for damages. Thus, there is no order that this Court can enter against the City that would serve any useful purpose or have any practical effect. Accordingly, temporary injunctive relief, *i.e.*, a temporary restraining order, against the City is not appropriate.[4]

**D.  Declaratory Relief Is Available at the End of a Lawsuit, But Not as Preliminary Relief**

In their reply in support of their motion for temporary restraining order, Plaintiffs state that the City's arguments "fundamentally misconstrue the nature of plaintiffs' *declaratory judgment* action" and that "Plaintiffs seek a *declaration* that paramount state law preempts the Ordinance and that the Ordinance violates due process and the state and federal contract clauses." ECF 19 at 2. A lawsuit seeking a declaratory judgment is a perfectly acceptable form of action. *See generally* 28 U.S.C. § 2201 ("In a case of actual controversy within its

---

[4] The Court expresses no opinion at this time regarding Plaintiffs' not-yet-fully-briefed motion for preliminary injunction. Nevertheless, the issues discussed in this Opinion and Order likely will need to be addressed as part of the Court's consideration of any such motion.

jurisdiction, . . . any court of the United States . . . may declare the rights and other legal relations

of any interested party seeking such declaration, whether or not further relief is or could be

sought. Any such declaration shall have the force and effect of a final judgment or decree and

shall be reviewable as such."); Fed. R. Civ. P. 57 ("The existence of another adequate remedy

does not preclude a declaratory judgment that is otherwise appropriate.").

Thus, at the end of this lawsuit, if Plaintiffs are correct on the merits, the Court may enter

declaratory relief in their favor, which has the effect of a final judgment. In addition, Rule 57 of

the Federal Rules of Civil Procedure provides: "The court may order a speedy hearing of a

declaratory-judgment action." What the Court may not do, however, is grant a motion seeking

temporary "declaratory" relief—and that appears to be precisely what Plaintiffs are seeking in

their pending motion for temporary restraining order.

A federal court has no authority to grant a motion seeking temporary declaratory relief.

As the Ninth Circuit unambiguously explained:

> "a party may not make a *motion* for declaratory relief, but rather,
> the party must bring an *action* for a declaratory judgment. Insofar
> as plaintiffs seek a motion for a declaratory judgment, plaintiffs'
> motion is denied because such a motion is inconsistent with the
> Federal Rules. The only way plaintiffs' motion can be construed as
> being consistent with the Federal Rules is to construe it as a motion
> for summary judgment on an action for a declaratory judgment."

*Kam-Ko Bio-Pharm Trading Co. Ltd-Australasia v. Mayne Pharma (USA) Inc*., 560 F.3d 935,

943 (9th Cir. 2009) (quoting *Int'l Bhd. of Teamsters v. E. Conference of Teamsters*, 160

F.R.D. 452, 456 (S.D.N.Y.1995)) (emphasis in original); *see also Centrifugal Acquisition Corp.*

*v. Moon*, 2010 WL 152074, at *1 (E.D. Wis. Jan. 14, 2010) (denying motion for declaratory

relief and explaining that "the motion is procedurally improper because there is no such thing as

a motion for declaratory relief").

PAGE 15 – OPINION AND ORDER

**CONCLUSION**

There is no temporary restraining order that can be fashioned that directs the City to do or refrain from doing something that would provide any meaningful or practical relief in this case. Further, to the extent that Plaintiffs seek temporary declaratory relief, such an interim remedy is not legally available. Accordingly, Plaintiffs' Motion for Temporary Restraining Order (ECF 4) is DENIED.

**IT IS SO ORDERED**.

DATED this 15th day of February, 2017.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge